54 F.3d 493
 67 Fair Empl.Prac.Cas. (BNA) 1209,
66 Empl. Prac. Dec. P 43,541
Myrna WEST, Plaintiff-Appellee/Cross-Appellant,
v.
MARION MERRELL DOW, INC., Defendant-Appellant/Cross-Appellee.
 Nos. 94-1294, 94-2644, and 94-2924.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 11, 1995.
Decided May 9, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied June 26, 1995.
 
 Michael J. Gallagher, Kansas City, MO, argued, for appellant.
 Dennis E. Egan, Kansas City, MO, argued (David S. Jones, on the brief), for appellee.
 Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and JONES,* Senior District Judge.
 LOKEN, Circuit Judge.
 
 
 1
 Myrna West commenced this employment discrimination suit against her former employer, Marion Laboratories, Inc., now Marion Merrell Dow, Inc. ("Marion"), alleging sex, age, and retaliation discrimination. After a six-day trial, the jury awarded West $350,000 in compensatory damages on her claim that Marion had retaliated after West filed a charge accusing Marion of sex and age discrimination. The district court awarded additional front-pay damages and attorney's fees, and Marion appeals.
 
 
 2
 West's retaliation claim is that Marion reneged on a promise that it would find her a position in Atlanta if she married and moved there. After West committed to move, Marion advised that it had no openings in Atlanta, and West took the position she was constructively discharged. However, before West resigned, Marion reconsidered and offered her a choice of Atlanta-based positions. West nonetheless immediately resigned her employ with Marion. Because West unreasonably refused Marion's attempt to accommodate her desire to transfer, we conclude that there is insufficient evidence that Marion reneged on a promise, or that West was constructively discharged. Accordingly, we reverse.
 
 I.
 
 3
 The jury rejected West's claims of sex and age discrimination, so we limit our discussion to the facts relevant to her retaliation claim. We view the evidence in the light most favorable to West and give her the benefit of all reasonable inferences that may be drawn from that evidence. Smith v. Goodyear Tire & Rubber Co., 895 F.2d 467, 471 (8th Cir.1990).
 
 
 4
 Marion hired West in February 1978. In late 1986, she was promoted to district manager of the Wound Care Division, marketing products used in treating major wounds and burns. As district manager, West was based in Dallas, Texas, and managed eight field sales representatives who covered the western half of the country.
 
 
 5
 In November 1988, West told her supervisor, James Laufenberg, that she was planning to marry an Atlanta resident in June 1989. West advised that she wanted to remain with Marion but, following the marriage, would need to relocate to Atlanta, or to Marion's headquarters in Kansas City where her new husband could relocate. West hoped that she would be promoted to regional manager for the Wound Care Division in Kansas City, but Laufenberg was "not particularly positive" that she would attain that position.
 
 
 6
 On May 5, 1989, West again expressed concern about her upcoming wedding and need to relocate. Laufenberg assured her that she could remain with the Wound Care Division and transfer to Atlanta. At a minimum, Laufenberg explained, he would split an existing sales territory and give West an entry level field sales position until the Division grew enough to justify creating a new district manager position in Atlanta.
 
 
 7
 On May 16, 1989, West filed a sex and age discrimination charge with the Equal Employment Opportunity Commission, alleging that Marion had violated Title VII and the ADEA by repeatedly failing to promote her to regional manager. At the end of May, she postponed her marriage and request to transfer. On August 8, however, she advised Laufenberg that the marriage would take place on October 7, and she asked to be transferred to Atlanta. Though he acknowledged his earlier assurances to the contrary, Laufenberg replied that he had no available Atlanta position in the Wound Care Division because "too much is up in the air now." He suggested that West ask Mike Gianini of Marion's Human Resources staff if there were openings in Atlanta elsewhere in the company.
 
 
 8
 On August 29, West met with both Laufenberg and Gianini. Laufenberg advised that there was no opening in the Wound Care Division in Atlanta. Gianini advised that he had looked but was unable to find her an Atlanta position elsewhere in the company. West then wrote a lengthy letter to Laufenberg on September 2, and she filed a charge of retaliation discrimination on September 5. In both documents, she asserted that Laufenberg had withdrawn his offer to find her a Wound Care Division position in Atlanta, that Gianini had made a perfunctory effort to find her an alternative opportunity in Atlanta, and therefore that she was "forced to leave Marion" because the company refused to offer her "the same [transfer] opportunities that countless others had received."
 
 
 9
 On September 11, Laufenberg wrote West and asked that she provide the specific date of her move to Atlanta to "help me to start the process of interviewing for a [district manager] in Dallas." Treating this as a request to resign, West again wrote Laufenberg on September 20, asserting that she had endured eleven years of sexual discrimination and harassment, and concluding:
 
 
 10
 I am now forced to tender my resignation effective September 30, 1989. It is my belief that because I have protested the treatment I have received that the position you promised to make for me in Atlanta was withdrawn.
 
 
 11
 On September 21, apparently before he received West's September 20 resignation letter, Laufenberg responded to her September 2 letter. Expressing surprise at this letter, Laufenberg commented, "you know very well that I sincerely want you to remain with Marion, in the Wound Care Division if possible." Laufenberg stated that the Wound Care Division's expansion plans were on hold, so he could not add a new Atlanta district manager. He suggested the following alternatives to permit West to remain with Marion:
 
 
 12
 "[R]emain in your District Manager position in Dallas pending resolution of these workforce scale-up issues."
 
 
 13
 Apply for any of five executive positions then available at Marion's Kansas City headquarters. (None was a regional manager's position, the subject of West's first discrimination charge.)
 
 
 14
 Though Marion has no open field sales positions in the Atlanta area, "[y]ou may take" any of several territories open in the southeastern United States.
 
 
 15
 Alternatively, Marion's Prescription Products Division "will provide you with a Rover position in Field Sales.... This will permit you to move to Atlanta and remain with Marion at no loss in base pay while we wait for a regular opening to develop" in Atlanta.
 
 
 16
 After receiving Laufenberg's September 21 letter, West declined all of the positions offered and resigned on September 30. She testified that, by late September 1989, she had committed to reside in Atlanta after her marriage. She rejected Laufenberg's offer of sales positions in Atlanta because they were "too little, too late," they were not bona fide offers but only invitations to "interview for a position," and she was not willing to accept an insulting demotion to a field sales position.
 
 
 17
 At trial the parties differed as to why Laufenberg in May had assured West of at least a field sales position with the Wound Care Division in Atlanta, but then in August told her nothing was available. West argued this was retaliation for her May 16 discrimination charge. She presented evidence that Marion had specially accommodated many other employees who asked to relocate. She also introduced an August 23 handwritten note by Laufenberg reciting that Edward Connolly told Laufenberg, "[regarding] Myrna's request for special consideration or exploration of work in Atlanta area ... not to attempt to create anything 'special' we would not ordinarily do." Connolly was Marion's Director of Associate Relations responsible for responding to West's EEOC charge.
 
 
 18
 On the other hand, Laufenberg testified that the Wound Care Division's business conditions changed dramatically between May 5 and August 8, 1989, eliminating his ability to offer West a Wound Care Division position in Atlanta. First, the Division encountered production problems with two significant products. Then, in mid-July, Marion agreed to merge with Merrell Dow Pharmaceuticals, Inc. That merger froze Laufenberg's expansion plans for the Wound Care Division. Indeed, he explained, in October 1989, after West had resigned, Marion decided to divest the entire Wound Care Division because its product line did not fit the post-merger company's global marketing strategy.
 
 
 19
 At the close of the evidence, the district court denied Marion's motion for judgment as a matter of law and submitted West's retaliation claim to the jury. The jury found that Marion withdrew its offer to transfer West to Atlanta and constructively discharged her because she filed the initial charge of sex and age discrimination.[1] Following the jury's verdict, the district court denied Marion's renewed motion for judgment as a matter of law, and these appeals followed.
 
 II.
 
 20
 An employer may not retaliate against an employee for bringing charges of age or sex discrimination. See 29 U.S.C. Sec. 623(d); 42 U.S.C. Sec. 2000e-3(a). To prove unlawful retaliation discrimination, a plaintiff must show "(1) statutorily protected participation [in Title VII or ADEA processes]; (2) adverse employment action; and (3) a causal connection between the two." Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir.1980), cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).
 
 
 21
 Constructive discharge, like any other discharge, is an adverse employment action that will support an action for unlawful retaliation. See Landgraf v. USI Film Prods., 968 F.2d 427, 431 (5th Cir.1992), aff'd on other grounds, --- U.S. ----, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); Jordan v. Clark, 847 F.2d 1368, 1377 n. 10 (9th Cir.1988), cert. denied, 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989). An employee is constructively discharged "when an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job." Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir.1994). The standard is an objective one. "An employee may not be unreasonably sensitive to [her] working environment. A constructive discharge arises only when a reasonable person would find [her working] conditions intolerable." Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir.1981).
 
 
 22
 Marion argues that this cannot be a constructive discharge case because West chose to move to Atlanta for personal reasons and Marion had no obligation to provide her a job in Atlanta. Marion cites Smith v. Goodyear, 895 F.2d at 472-73, in which we held that an employee who rejected relocation for personal reasons after his position was eliminated was not constructively discharged. However, Smith v. Goodyear is distinguishable. West's claim was not simply that Marion denied her request for a transfer. West's evidence tended to prove that Marion promised her a job in Atlanta; that she firmed up her marriage plans, moved to Atlanta, and enrolled her son in an Atlanta school in reliance on that promise; and that Marion then withdrew that opportunity because she filed her initial charge of sex and age discrimination. Breach of that kind of promise is, without question, adverse employment action, and it could amount to constructive discharge depending upon the extent of the employee's reasonable reliance. While West's evidence of intent to retaliate was thin, it was adequate to support the jury's verdict.
 
 
 23
 Thus, if Marion in fact promised West that she would have a job in Atlanta, and then reneged on that promise after she had committed to move, we would not disturb the jury's finding that she was constructively discharged. However, the undisputed evidence is to the contrary. Before West resigned, Marion reconsidered its position and, in Laufenberg's September 21 letter, offered her the choice of a field sales position in a territory she could cover from Atlanta, or a new position in Atlanta as a "rover" sales representative for the Prescription Products Division. Though these positions were not at the level of the district manager position West chose to leave in Dallas, they were equivalent in compensation and responsibility to the new Wound Care Division field sales position that Laufenberg had promised her on May 5, 1989, the promise that is the basis for her unlawful retaliation claim. Therefore, we agree with Marion that the evidence is insufficient to support a finding that Marion reneged on a promise to transfer West to Atlanta.
 
 
 24
 Turning to the issue of constructive discharge, we note first that West rejected Laufenberg's September 21 offers without any investigation and immediately resigned. She testified that Laufenberg's September 21 letter was not "a bona fide offer" because the Atlanta positions offered were simply "invitations to interview." But this is contrary to the plain meaning of Laufenberg's letter, which said that "you may take" any open southeastern sales territory, and that the Prescription Products Division "will provide" a rover sales position. West admitted that Laufenberg's prior plan to expand the Wound Care Division had been derailed by the recent merger. She could not continue to serve as district manager for the western United States while living in Atlanta. In these circumstances, her decision to quit one week after receiving the offers contained in Laufenberg's September 21 letter was unreasonably precipitous.
 
 
 25
 "Part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast." Smith v. Goodyear, 895 F.2d at 473 (emphasis in original). An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged. See Shealy v. Winston, 929 F.2d 1009, 1013 (4th Cir.1991); Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir.1987); Raley v. Board of St. Mary's County Comm'rs, 752 F.Supp. 1272, 1279 (D.Md.1990). Indeed, even if Marion had made the decision to transfer West to a position she opposed, she would not necessarily have been constructively discharged:
 
 
 26
 Unless the transfer is, in effect, a discharge, the employee has no right simply to walk out.... The employee cannot recover damages for losses that he could have avoided without risk of substantial loss or injury.
 
 
 27
 Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir.1977). Here, the problem was caused by West's desire to relocate for personal reasons, so she had an even greater obligation to be flexible and reasonable.
 
 
 28
 West also testified that she rejected Laufenberg's September 21 offers because she considered them a "visible insult" and "another effort on Marion's part to humiliate me." Given West's belief that she had been the victim of long-standing sex and age discrimination, these subjective reactions were no doubt genuine. However, frustration and embarrassment at not being promoted do not make work conditions sufficiently intolerable to constitute constructive discharge. See Maney, 802 at 1075-76; Jett v. Dallas Ind. School Dist., 798 F.2d 748, 755 (5th Cir.1986), remanded in part on other grounds, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); Wardwell v. School Bd. of Palm Beach County, 786 F.2d 1554, 1558 (11th Cir.1986). As Judge Frank M. Johnson said in the leading case of Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 66 (5th Cir.1980), "society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships."
 
 
 29
 The judgment of the district court dated December 20, 1993, and the order of the district court granting West's motion for attorney's fees dated June 20, 1994, are reversed. The case is remanded for the entry of judgment in favor of Marion on all of West's claims. Because West is no longer a prevailing party, we need not consider the cross-appeals challenging the district court's award of attorney's fees.
 
 
 
 *
 The Honorable John Bailey Jones, Senior United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The jury was properly instructed that West could not receive damages for wages and benefits after September 30, 1989, unless she had been constructively discharged. See Maney v. Brinkley Mun. Waterworks and Sewer Dep't, 802 F.2d 1073, 1075 (8th Cir.1986)