# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3714

_____

Reverend Gary Thompson,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant,　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Eastern District of Missouri.
Bi-State Development Agency,　　　*
doing business as Metro,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee.　　　　　*

_____

Submitted: April 21, 2006
　　　Filed: September 22, 2006

_____

Before ARNOLD and COLLOTON, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

Reverend Gary Thompson ("Thompson") appeals the district court's[2] adverse grant of summary judgment in his employment discrimination action against Bi-State Development Agency ("Bi-State").  We affirm.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

FACTUAL AND PROCEDURAL BACKGROUND

Thompson worked for Bi-State as a bus driver from 1991 until an on-the-job accident in June 2003. Before the instant lawsuit, Thompson had filed two previous racial discrimination and retaliation lawsuits against Bi-State. The first, filed in February 2001, was settled in October 2001. The second was filed in August 2003. Bi-State was granted summary judgment in that suit in December 2004.

The accident relevant to this case occurred on June 4, 2003, when Thompson, while driving an empty bus, collided with a truck. Thompson claimed he had been suffering from job-related headaches and stress, which caused him to "blank out." Bi-State conducted an investigation, including review of a digital video recording of the inside of the bus, which showed Thompson had braked four seconds before the collision. Bi-State classified the accident as "preventable." This was Thompson's second preventable accident in a twelve-month period. Pursuant to Bi-State's Employee Guidelines, the range of discipline for a second preventable accident in a twelve-month period is a suspension without pay for one to five working days and retraining for one to three days. Disciplinary action is handed down at a hearing involving the Transit Service Manager and the bus operator.

After the accident, Thompson was placed on sick leave and evaluated by several physicians and psychiatrists. Several of their reports conflicted with each other. Thompson's treating psychiatrist concluded he was fit to return to work. Another physician opined that Thompson could not operate a motor vehicle but, after a neurologist determined Thompson's "blanking out" episode was an isolated incident, the physician changed his opinion and released Thompson to return to work. However, another psychiatrist concluded that, based on a long and continuing history of serious psychiatric symptoms, Thompson was not able to safely perform the job of a bus operator. Bi-State informed Thompson that it had concluded he was unable to perform the duties of his job as a bus operator and would not be allowed to return

to work. Bi-State also informed Thompson he was eligible for a disability pension. Through his union, Thompson requested an independent psychiatric evaluation. The independent psychiatrist found that Thompson's schizo-affective disorder was under good control with medications, "except for the stress of being off work and his general distrust of management." The psychiatrist also expressed concerns about Thompson's preoccupation with "issues of discrimination."

Thompson was released to return to work effective December 1, 2003, with no limitations on his ability to perform his job. He also was not restricted from attending hearings, or from discipline, suspension, or retraining. Thompson returned to work in early December 2003. Upon his return, in accordance with its Employee Guidelines, Bi-State conducted a disciplinary hearing regarding the June 2003 accident. At the hearing, Thompson was given a five-day suspension and was required to attend three days of retraining. However, Thompson was offered probation instead of a suspension, which was a common practice at Bi-State. Thompson turned down the offer, so Bi-State imposed the standard discipline of a five-day suspension and three days of retraining. After the hearing, Thompson contacted the union president, informing him that Thompson was tired of being harassed and wanted to take his disability retirement. Thompson then took the disability retirement benefits, never actually returning to work as a bus operator. Thompson filed the instant lawsuit on May 17, 2004, claiming Bi-State violated Title VII by retaliating against him for filing his two other lawsuits, and violated the Americans with Disabilities Act (ADA) by forcing him to take a disability pension.

The district court granted summary judgment to Bi-State. On the Title VII retaliation claim, the court ruled Thompson failed to present a prima facie case of retaliation, because Thompson could not show a causal connection between the filing of his previous lawsuits and the December 2003 hearing when he was disciplined. On the ADA claim, the court ruled Thompson had not been constructively discharged,

specifically noting Thompson had not presented evidence to show Bi-State's disciplinary action was designed to force him to take a disability pension.

DISCUSSION

A.    Standard of Review

We review de novo the district court's grant of summary judgment. Liljedahl v. Ryder Student Transp. Servs., Inc., 341 F.3d 836, 840 (8th Cir. 2003).[3] Summary judgment is proper if the evidence before the court and all reasonable inferences to be drawn from it, viewed most favorably to Thompson, show no genuine issues of material fact exist, and Bi-State is entitled to judgment as a matter of law. See id. at 840-41; Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

B.    ADA Claim

Thompson contends the district court erred in granting summary judgment on his ADA claim, because genuine issues of material fact exist as to whether he was disciplined due to his disability. The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); Brunko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001). Absent direct evidence of retaliation, we must apply the McDonnell Douglas[4] three-

---

[3]Curiously, although this is an appeal of the district court's grant of summary judgment to Bi-State, Thompson's appellate brief nowhere contains the words, "de novo." Instead, Thompson argues the district court "abused its discretion" and was "clearly erroneous" in granting summary judgment. Regardless of Thompson's arguments, the court will apply the de novo standard of review to the district court's summary judgment ruling.

[4]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

-4-

part burden-shifting analysis to Thompson's claim. Baucom v. Holiday Cos., 428 F.3d 764, 766 (8th Cir. 2005). Under this burden-shifting framework, we ask first whether Thompson has presented a prima facie case of discrimination; next, whether Bi-State rebutted the prima facie case by articulating a legitimate, non-discriminatory reason for the action it took; and finally, whether Thompson met his burden to prove Bi-State's proffered justification was merely a pretext for discrimination. See id.

In order to establish a prima facie case of discrimination under the ADA, Thompson is required to show that 1) he is disabled within the meaning of the ADA; 2) he is qualified to perform the essential functions of the job, with or without accommodation; and 3) he has suffered an adverse employment action due to his disability. Darby v. Bratch, 287 F.3d 673, 682 (8th Cir. 2002). The district court concluded Thompson had not presented a prima facie case of discrimination. The district court specifically ruled Thompson had not shown he was constructively discharged and, thus, could not show he suffered any adverse employment action.

Just like any other discharge, a constructive discharge is an adverse employment action. West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995). A constructive discharge occurs "when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job." Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir.1994) (citation omitted). Under the objective standard applicable to constructive discharge claims, "[a]n employee may not be unreasonably sensitive to [his] working environment." West, 54 F.3d at 497. A constructive discharge takes place only when a reasonable person would find working conditions intolerable. Id. "Part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast." Id. at 498 (citation omitted). "An employee who quits without giving [his] employer a reasonable chance to work out a problem is not constructively discharged." Id.

-5-

Based on this standard, we conclude Thompson was not constructively discharged. Upon Thompson's return to work in December 2003, Bi-State conducted the disciplinary hearing. The hearing was conducted in accordance with Bi-State's Employee Guidelines. The record shows Bi-State followed its normal procedure and assessed the standard discipline against Thompson. Thompson testified he did not believe he was entitled to an exemption from discipline. However, as the district court noted, Thompson has presented no evidence that, by following its normal procedures and applying standard disciplinary rules, Bi-State was trying to create an intolerable working environment for Thompson.

Furthermore, Thompson also testified that he took the disability pension in 2003 because he believed Bi-State intended to harass him, making the decision to take the pension before actually returning to work. Even assuming Bi-State had done something wrong in assessing discipline against Thompson, Thompson too quickly jumped to the conclusion that Bi-State was attempting to make his working conditions intolerable. Thompson never gave Bi-State and opportunity to work out the alleged problem. Thus, Thompson was not constructively discharged and is unable to make out a prima facie case of discrimination under the ADA. The district court properly granted summary judgment on this claim.

C.    Title VII Retaliation Claim

Thompson next argues the disciplinary hearing and resulting discipline, handed down in December 2003, were retaliation against him for filing his previous lawsuits against Bi-State and for exercising his right to return to work after the June 2003 accident. Title VII prohibits retaliation against an employee who files charges of discrimination or assists others in opposing discrimination. 42 U.S.C. § 2000e-3(a); EEOC v. Kohler Co., 335 F.3d 766, 772 (8th Cir. 2003). As with Thompson's ADA claim, absent direct evidence of retaliation, we must apply the McDonnell Douglas three-part burden-shifting analysis to Thompson's retaliation claim. Kasper v.

Federated Mut. Ins. Co., 425 F.3d 496, 502 (8th Cir. 2005). Under this framework, we ask first whether Thompson has presented a prima facie case of retaliation. Id.

To establish a prima facie case of retaliation, Thompson must present evidence that 1) he engaged in activity protected under Title VII; 2) an adverse employment action was taken against him; and 3) a causal connection between the two. Id. The district court ruled Thompson had not made out a prima facie case of retaliation, concluding Thompson had not presented evidence to show a causal connection between the filing of his previous lawsuits and the discipline assessed against him.

We agree with the district court's observation that the only connection between the lawsuits and the hearing was one of time, and that connection was a weak one. Although we have opined that the "timing of [a] termination can be close enough to establish causation in a prima facie case," Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1037 (8th Cir. 2005), we have repeatedly stated that "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation," Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999); see also Haas, 409 F.3d at 1037. Furthermore, "[o]ur recent cases have, in our view, made clear that a 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge." Kipp v. Mo. Highway &Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002). This case is not, in our opinion, one of those rare cases where the "mere coincidence of timing" establishes a case of retaliation.

In this case, Thompson was on sick leave for approximately six months as different physicians and psychiatrists evaluated him to determine whether he could return to work. In December 2003, Thompson was cleared to return to work for the first time after the June 2003 accident. Thompson's return marked Bi-State's first opportunity to address the accident and the disciplinary action to be taken against Thompson therefor. Until Thompson was cleared to return to work, no need existed

to conduct a disciplinary hearing; such a hearing would have been a waste of time unless Thompson was going to return. Bi-State's Employee Guidelines provide for a five-day suspension and three days of retraining for employees who have a second preventable accident in a twelve-month period. The disciplinary action Bi-State took against Thompson was identical to that provided in the Employee Guidelines. Nothing in the record suggests Bi-State would not have imposed discipline on Thompson immediately after the accident had Thompson continued working at that time. No evidence has been presented to show the hearing and discipline resulted from the filing of Thompson's second lawsuit four months earlier. In fact, it is difficult to believe Bi-State went through the trouble of reinstating Thompson just so it could retaliate against him. Thompson was off work and filed a discrimination lawsuit against Bi-State before it had a chance to discipline him in accordance with company policy. We conclude Thompson failed to present evidence of a causal connection between the filing of lawsuits against Bi-State and the disciplinary action taken upon his return to work. The district court properly granted summary judgment on this claim.

D.    Remaining Claims

On appeal, Thompson claims that the district court violated his due process rights when it granted summary judgment to Bi-State, and that the court failed to consider the evidence in the light most favorable to him. Thompson also argues Bi-State failed to accommodate him. We have reviewed these arguments and, to the extent they are not subsumed in the summary judgment arguments, we conclude they are without merit. The judgment of the district court is affirmed. See 8th Cir. R. 47B.

CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of Bi-State.

_____

-8-