# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3804

_____

| | | |
|---|---|---|
| Elaine Liljedahl, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Ryder Student Transportation | * | |
| Services, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 13, 2003

Filed: September 10, 2003

_____

Before RILEY and HEANEY, Circuit Judges, and ERICKSEN,[1] District Judge.

_____

RILEY, Circuit Judge.

After Ryder Student Transportation Services, Inc. (Ryder) discharged Elaine Liljedahl (Liljedahl), Liljedahl sued Ryder for age discrimination, disability

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

discrimination, and retaliation. The district court[2] granted summary judgment to Ryder. We affirm.

## I.    BACKGROUND

Ryder provides school bus transportation services for school districts. Liljedahl worked for Ryder and its predecessor for twenty-three years, the last eleven as a manager in the Oakdale, Minnesota, terminal. In August 1996, Dr. Nancy Nelson, Liljedahl's primary care physician, diagnosed Liljedahl with emphysema. In December 1996, Liljedahl was diagnosed with lung cancer. Later that month, Dr. John Shearen, Liljedahl's surgeon, removed Liljedahl's lymph nodes and half of her left lung during lung resection surgery. The cancer surgery was curative. Liljedahl was on paid medical leave from December 1996 to March 1997.

On February 19, 1997, Liljedahl wrote her supervisor, Bruce Dischinger (Dischinger), a hand-written note saying "I'm due back 3/3 'half time' – which in my mind means 'as tolerated.'" She included with her letter a note dated February 17, 1997, from Dr. Nelson, which reads in full: "Ms. Liljedahl has been recuperating from surgery. I have recommended she return to work half-time on March 3." On February 20, 1997, Liljedahl submitted a "Request for Leave of Absence," listing her reason for leave as a "Thoracotomy for the removal of left upper lung." On April 2, 1997, Dr. Nelson completed Ryder's Family and Medical Leave Certificate, listing lung cancer as Liljedahl's diagnosis, stating "12-26-96" was when the condition commenced, and listing March 1997 as the probable duration of the condition. A section of the certificate entitled "Regimen of Treatment to be Prescribed" requested "a schedule of visits or treatment if it is medically necessary for the employee to be off work on an intermittent basis or to work less than the employee's normal schedule

---

[2]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

of hours per day or days per week." Responding to this request, Dr. Nelson listed "For Lung Resection Surgery [and] Recuperation."

From early April to June 1997, Ryder assigned Tom TerHorst to assist Liljedahl in the Oakdale terminal. Dischinger never asked Liljedahl about her need for an accommodation, never sought clarification of the February 17, 1997 doctor's note, and never sought additional medical documentation. On May 16, 1997, Liljedahl wrote a ten-paragraph memorandum to Dischinger responding to Dischinger's memoranda on work issues. In a paragraph discussing her hectic dispatch schedule, Liljedahl wrote the following statement: "I work between 9 and 12 hours a day now without coming in any earlier. There is enough experience between Greg and Bart to do the job. And, if I remember correctly, I still have not gotten full time plus overtime clearance from my doctor."

The Oakdale terminal's two largest customers, the North St. Paul School District (North St. Paul) and the St. Paul School District (St. Paul), made significant complaints about the Oakdale terminal for the 1996-1997 school year. On December 5, 1996, North St. Paul wrote Ryder regarding the seventeen most common problems. On June 21, 1997, St. Paul wrote Ryder complaining of poor service and stating the "level of service must significantly improve next school year or severe nonperformance consequences will occur." Based on the Oakdale terminal's unsatisfactory performance, St. Paul assessed the largest non-performance penalty in its history against any terminal. In a July 17, 1997 memo to Liljedahl, Dischinger wrote: "We are out of time . . . virtually all of your customers have expressed a serious service concern. We must do something about it **now**!"

Also in July 1997, Dischinger conducted an employee survey of the Oakdale terminal, which produced scores in five categories from 1.44 to 2.39 on a 4.0 scale (with the lowest scores for "Sensitivity to your needs," "Fairness" and "Overall Professionalism"). On August 5, 1997, Dischinger appraised Liljedahl's job

performance and placed her on a ninety-day probation period to review her performance. He also sought a response by August 28, 1997. On August 27, 1997, Liljedahl responded by memorandum, which included the following statement: "You also say my physical status has nothing to do with how much I was able to do? I am still healing and am on pain medication. A person can run out of time as a Minnesota manager short of drivers, dispatching 3 to 5 hours a day and filling in where ever [sic] necessary to keep staff's work done." Based on Liljedahl's "defiant response," which indicated "she was not interested in working on any of the problems that [Dischinger] had outlined," Dischinger discharged Liljedahl on September 3, 1997.

On July 30, 1998, Liljedahl, with the assistance of her attorney, filed a charge against Ryder with the Minnesota Department of Human Rights (MDHR), alleging age discrimination, disability discrimination, and retaliation. The charge contended Ryder's "true motivation" for discharging Liljedahl was because "Ryder and Mr. Dischinger did not want the 'liability' of a 58 year-old female cancer patient under its employ." The charge did not mention emphysema or breathing problems, but focused on cancer. On August 10, 1999, MDHR issued a no-cause determination.

On September 3, 1999, Liljedahl sued Ryder for age and disability discrimination, as well as retaliation, in violation of the Americans with Disabilities Act of 1990 (ADA), the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, and the Minnesota Human Rights Act (MHRA). Liljedahl's First Amended Complaint, dated January 4, 2000, did not mention emphysema or breathing problems, but focused on cancer. Like the MDHR charge, the complaint alleged Ryder "unlawfully terminated [Liljedahl] because [Ryder] did not want the liability of an old woman with cancer on its payroll." Under the disability count based on the MHRA, Liljedahl claimed her impairment "materially limited one or more of her major life activities, including, but not limited to, employment and recreational activities." Liljedahl later moved to file a Second Amended Complaint, dated January 11, 2002, which removed her federal claims and

included new factual allegations: "Plaintiff had minor breathing problems and emphysema prior to being diagnosed with lung cancer in 1996. In December 1996, she had surgery for the cancer, which resulted in the surgical removal of nearly half of one of her lungs and an exacerbation of her symptoms resulting from the emphysema . . . ." Liljedahl also claimed she had an impairment which materially limited the major life activities of "walking, sleeping and breathing."

Dr. Nelson testified in her deposition that Liljedahl's respiratory condition, a life-long impairment, is substantial, limits her exercise tolerance, and puts her at risk for repeated infections. Dr. Nelson said an inhaler helps Liljedahl's breathing, "but it does not, in no way, correct her breathing to normal, or reasonably close to it." Finally, Dr. Nelson testified Liljedahl is using maximal therapy for her breathing. Dr. Shearen testified in his deposition that Liljedahl's pre-operative breathing capacity was 54% of normal capacity for people the same age and size. He said Liljedahl's "breathing tests preoperatively define her breathing impairment," noting the only breathing capacity tests were conducted on December 20, 1996. He said surgery in this instance would not have improved Liljedahl's breathing capacity.

Dr. Nelson, who "never actually directly treated [Liljedahl] for cancer," testified Liljedahl's emphysema worsened because part of her lung was removed. The cancer surgeon, Dr. Shearen, stated the removal of half of Liljedahl's lung "wouldn't necessarily increase her symptoms of emphysema," but recognized removing half a lung could potentially make a breathing problem more pronounced. Without post-operative breathing tests, Dr. Shearen said it was impossible for him to say whether Liljedahl's breathing impairment had been altered by the surgery.

Liljedahl moved for partial summary judgment on two issues: (1) she is a qualified individual with a disability; and (2) Ryder had a duty to provide a reasonable accommodation. Ryder moved for summary judgment on all claims. The district court granted Ryder's motion for summary judgment and denied Liljedahl's

motion for partial summary judgment. The district court determined Liljedahl's federal claims were time-barred and she failed to establish a prima facie case of age discrimination or retaliation. Addressing Liljedahl's disability claims under the MHRA, the court concluded Liljedahl was not disabled because of her cancer. Recognizing Liljedahl's new theory that her emphysema and respiratory problems were caused by the cancer surgery, the court held Liljedahl had no impairment materially limiting a major life activity, and that her respiratory problems were controlled by medication. The court determined that, even if Liljedahl had a respiratory disability, Liljedahl never gave Ryder notice of the respiratory disability or requested an accommodation for it. On appeal, Liljedahl has abandoned all claims except her MHRA disability discrimination claims.

## II.    DISCUSSION

The district court's grant of summary judgment to Ryder must be reviewed de novo. Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003). Summary judgment for Ryder is proper if the evidence, viewed in the light most favorable to Liljedahl and giving her the benefit of all reasonable inferences, shows there are no genuine issues of material fact and Ryder is entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56(c).

### A.    Discriminatory Discharge

An employer violates the MHRA when it discharges an employee because of a disability. Minn. Stat. § 363.03, subd. 1(2)(b). Under the MHRA, a disability is "any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Id. § 363.01, subd. 13. To establish a prima facie case of disability discrimination under the MHRA, Liljedahl must show (1) she has a disability within the meaning of the MHRA, (2) she is qualified to perform the essential functions of her job, with or without reasonable

-6-

accommodation, and (3) she suffered an adverse employment action because of her disability. Philip v. Ford Motor Co., 328 F.3d 1020, 1023 & n.3 (8th Cir. 2003) ("Claims arising under the MHRA are analyzed using the same standard applied to ADA claims.").[3]

Liljedahl contends she is materially limited in the major life activity of breathing. However, Liljedahl must establish the specific impairment which materially limits her breathing. Liljedahl's entire case hinges on her argument that, because Ryder knew about her cancer surgery, Ryder should have known Liljedahl had emphysema or breathing problems. This untenable argument belies the record and Liljedahl's own understanding of her disability throughout this litigation.[4]

The district court determined Liljedahl's cancer does not qualify as a disability under the MHRA. We agree. Liljedahl's cancer surgery was successful and her recuperation period was limited. The record does not support a finding Liljedahl's cancer materially limited a major life activity (whether that be working, walking, sleeping, breathing or recreational activities).

In January 2002, Liljedahl transformed her case to blend cancer with emphysema and breathing problems. Her new theory is that her preoperative minor breathing problems and emphysema were exacerbated by her lung cancer and surgery, and Ryder should have known this. While Dr. Nelson's testimony supports the

---

[3]Under the ADA, disability means "a physical or mental impairment that substantially limits one or more of [an individual's] major life activities." 42 U.S.C. § 12102(2). Under the MHRA, an impairment must materially limit a major life activity, which is a "less stringent" standard. Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 543 nn.5-6 (Minn. 2001).

[4]In her MDHR charge, her first amended complaint, and even her brief on appeal, Liljedahl's theory has been she was discharged "to rid Ryder of the risk of an elderly employee who had cancer."

allegation that Liljedahl's surgery exacerbated her emphysema, Dr. Shearen had no knowledge of this exacerbation, and testified lung resection surgery "would not necessarily increase her symptoms of emphysema." Given Dr. Shearen's lack of knowledge regarding the impact of his surgery on Liljedahl's emphysema, the only way Liljedahl's transformed theory survives is if Ryder knew about Liljedahl's emphysema or breathing problems, because knowledge of the cancer surgery would not automatically put Ryder on notice of Liljedahl's emphysema or breathing problems.

Dr. Nelson diagnosed Liljedahl with emphysema in August 1996. Liljedahl and Dr. Nelson never informed Ryder of this diagnosis. When Liljedahl was diagnosed with cancer in December 1996, she requested time off for cancer surgery and recuperation. After her successful cancer surgery, most correspondence from Liljedahl and from Dr. Nelson to Ryder focused only on cancer. Neither Liljedahl nor Dr. Nelson referenced emphysema or breathing problems. Liljedahl has not provided evidence Ryder knew about her emphysema or breathing problems. Without knowledge of Liljedahl's emphysema or breathing problems, Ryder could not have discriminated against Liljedahl because of them.[5] See, e.g., Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380-82 (3d Cir. 2002) (finding no discrimination because employer's knowledge of employee's pneumonia, a temporary condition, was not enough to put employer on notice of employee's asthma).

## B.    Failure to Accommodate

An employer violates the MHRA by failing "to make reasonable accommodation to the known disability of a qualified disabled person." Minn. Stat. § 363.03, subd. 1(6). Reasonable accommodation "means steps which must be taken

---

[5]The district court decided Liljedahl's emphysema does not materially limit a major life activity. We need not reach this issue because we hold Liljedahl has not established Ryder knew about Liljedahl's emphysema or breathing problems.

to accommodate the known physical or mental limitations of a qualified disabled person." Id. Thus, to maintain a failure to accommodate claim, Liljedahl must show Ryder knew of her disability and failed to make reasonable accommodation for the known limitations. Hoover, 632 N.W.2d at 547. Liljedahl cannot make such a showing.

As we discussed above, Ryder never knew about Liljedahl's emphysema or breathing problems, and Liljedahl's cancer is not a disability under the MHRA. Thus, Liljedahl's failure to accommodate claim also fails. Even if Ryder knew about Liljedahl's emphysema or breathing problems, Liljedahl's failure to accommodate claim fails because the record does not support a finding Liljedahl's emphysema or breathing problems required an accommodation.

The MHRA requires an employer to accommodate known limitations so an employee can perform her job, but a requested accommodation must relate to the limitation. See Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 687 (8th Cir. 2003) ("Where the reasonable accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie. Put another way, there must be a causal connection between the major life activity that is limited and the accommodation sought."). The record reflects Liljedahl's need for a modified work schedule emanated from her cancer surgery and need to recuperate. Nothing suggests Liljedahl's emphysema or breathing problems required an accommodation. Liljedahl worked at least four months with emphysema and breathing problems–without notifying Ryder or seeking an accommodation–before she was diagnosed with cancer. Even if the surgery exacerbated Liljedahl's preoperative breathing problems, her doctors did not testify that Liljedahl's emphysema or breathing problems required a modified work schedule or other accommodation. Finally, Liljedahl's correspondence to Ryder never mentioned emphysema or breathing (even if one could reasonably decipher Liljedahl's correspondence as requesting an accommodation, which the district court rejected). It is evident Liljedahl sought a

modified work schedule to accommodate her cancer surgery and recuperation period. Because Ryder had no knowledge of Liljedahl's emphysema or breathing problems and Liljedahl's emphysema or breathing problems did not require an accommodation, Ryder was not legally required to provide an accommodation. See, e.g., id. (employee's impotence not related to accommodation sought).[6]

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in Ryder's favor.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]We recognize employers should engage in an interactive process to find a reasonable accommodation for an employee's limitations. See 29 C.F.R. § 1630.2(o)(3). However, nothing in this case suggests the interactive process would have uncovered Liljedahl's emphysema or breathing problems (for example, it took Liljedahl years of litigation to focus on her emphysema and breathing problems as opposed to cancer), and the record does not show Liljedahl's emphysema or breathing problems required an accommodation.

-10-