# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3238
_____

Gary D. Brunckhorst

*Plaintiff - Appellant*

v.

City of Oak Park Heights

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 16, 2018
Filed: February 4, 2019

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Gary Brunckhorst filed this employment discrimination suit under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*., and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.01 *et seq*., against his

former employer, the City of Oak Park Heights (the City). The district court[1] granted summary judgment to the City. We affirm.

I.

Brunckhorst worked for the City for more than fifteen years. In April 2014, he was serving as the Senior Accountant/Payroll Technician (Senior Accountant), a position that paid $72,000 per year and required him to perform payroll and information technology (IT) functions. Because the City is a small organization with approximately twenty-one employees, Brunckhorst also carried out back-up duties for accounts payable and utility billing, assisted the front office in answering phones, and covered for other employees during their lunch breaks. Although Brunckhorst performed his job at City Hall, he was able to perform certain IT functions from a computer at his home.

Brunckhorst contracted Fournier's gangrenous necrotizing fasciitis—a rare, life-threatening disease commonly known as "flesh-eating" bacteria—in mid-April 2014. He underwent three life-saving surgeries, spent nearly five months in a hospital/nursing care facility, and returned to his home in September 2014. The disease left Brunckhorst with long-term injuries.

Brunckhorst requested and was approved for leave under the Family and Medical Leave Act (FMLA) on April 16, 2014. Three months later, the City Administrator, Eric Johnson, informed Brunckhorst that his FMLA leave had been exhausted and that he was eligible to request unpaid leave for up to ninety days under

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

a city ordinance.[2]  Brunckhorst requested unpaid leave under the ordinance, and Johnson granted his request for sixty days with the possibility of thirty additional days thereafter.

Johnson sent Brunckhorst an updated job description for the Senior Accountant position on September 15, 2014.  The description set forth all of the duties that he had been performing.  Johnson asked Brunckhorst to provide documentation from his doctor regarding whether Brunckhorst was able to perform the essential functions of the position.  Brunckhorst responded with a letter from his doctor stating that Brunckhorst could not return to work within thirty days and requested extended leave.  Johnson granted his request.  Johnson again wrote to Brunckhorst about his condition on October 24 and requested that his doctor fill out a Medical Certification form.  Brunckhorst replied with a doctor's note stating that Brunckhorst might be able to return to work on December 1.  On November 14, Johnson extended Brunckhorst's leave up to December 1 and requested additional medical documentation.  Brunckhorst's doctor returned a form on November 24 stating that Brunckhorst might be able to return to work on January 1.

Earlier, on November 12, Johnson had told the City Council that the Senior Accountant position was no longer needed, partly because its duties had been absorbed by other employees.  The City Council favored eliminating the position and offering Brunckhorst a severance package.  Johnson, however, took steps to assign Brunckhorst to the position of Utility Billing Clerk/Accounting Technician so that he would have a job when he returned, albeit at a lower salary of $50,000.  The new position included the same benefits and was classified for union representation.

---

[2]Brunckhorst claims that he was entitled to one year of unpaid leave.  The ordinance, however, gives the City Administrator discretion to grant up to one year of unpaid leave.  See Oak Park Heights, Minn. Ordinance § 203.14(B)(2).

Brunckhorst met with his supervisor, Betty Caruso, and Johnson on December 22. Johnson informed Brunckhorst that the Senior Accountant position had been eliminated and allowed him to choose between the new position or a severance package. Brunckhorst replied that he wanted to remain in his original position. Brunckhorst testified that he had complained at the meeting that he was being discriminated against because of his disability. Brunckhorst retained counsel following the meeting.

Brunckhorst still had not returned to work by February 25, 2015. Johnson sent a letter asking Brunckhorst to provide a request by March 23 for any reasonable accommodations he might need to perform the essential functions of the new position, which included, among other duties, answering questions from the public and assisting with payroll. Johnson also required that Brunckhorst, were he to accept the new position, return to work by April 1 or his employment with the City would be terminated. Brunckhorst's attorney replied on March 24 requesting: (1) that Brunckhorst return to his original position, (2) that he work a graduated return-to-work schedule (*e.g.*, work less than eight hours per day) for 120 days, and (3) that he be allowed to work from home during those 120 days. Counsel further claimed that "Mr. Brunckhorst has previously informed the City of his limited mobility due to bilateral leg weakness which limits his mobility and renders Mr. Brunckhorst unable to negotiate stairs without assistance and/or to drive his motor vehicle."

A Work Ability Report from Brunckhorst's physician was also included with the letter, restricting him to four-hour work days with some physical limitations beginning March 18 and ending on May 18. The physician did not limit Brunckhorst to working from home. The City replied that it would consider Brunckhorst's requests at the next City Council meeting on April 6 and that City Hall was ADA accessible.[3] After the meeting, the City informed Brunckhorst that he could not

_____

[3]There are no stairs at City Hall.

-4-

return to his original position, nor could he work from home because he could not perform the essential functions of the new position from a remote location. The City instead offered to allow Brunckhorst to work at City Hall four hours per day from April 20 to May 18.

On April 14, Brunckhorst's attorney sent a letter accusing the City of refusing to engage in an interactive dialogue and claiming that the City had violated Brunckhorst's rights as a disabled employee. Around this time, Brunckhorst requested to meet with Johnson, the Mayor, and a City Council member. Brunckhorst's request was declined, but the City offered a meeting with its staff. Brunckhorst did not accept the City's invitation and did not return to work on April 20. On April 24, the City received a letter from Brunckhorst's attorney reciting the request to meet with Johnson, the Mayor, and a City Council member. At no time did Brunckhorst or his attorney request additional accommodations other than those outlined in the March 24 letter. On April 28, the City Council voted unanimously to terminate Brunckhorst's employment. The City informed Brunckhorst of his termination in a letter dated April 29.

## II.

Brunckhorst claims that the City violated the ADA and MHRA because it failed to offer reasonable accommodation and to engage in an interactive dialogue, it terminated his employment because of his disability, and it retaliated against him for complaining of disability discrimination. We review *de novo* the grant of summary judgment. Liljedahl v. Ryder Student Transp. Servs., Inc., 341 F.3d 836, 840 (8th Cir. 2003). Summary judgment "is proper if the evidence, viewed in the light most favorable to [Brunckhorst] and giving [him] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the City] is entitled to judgment as a matter of law." Id. at 840-41. Because "[c]laims arising under the MHRA are analyzed using the same standard applied to ADA claims," we review the

claims simultaneously. Philip v. Ford Motor Co., 328 F.3d 1020, 1023 n.3 (8th Cir. 2003).

## A.

Brunckhorst argues that the City failed to offer reasonable accommodation. "[I]f a party makes a reasonable accommodation claim, then we apply a modified burden-shifting analysis." Fenney v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003). Because Brunckhorst claims that he could not perform the essential functions of his job without an accommodation, he must "make a facial showing that reasonable accommodation is possible." Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999). "At that point, the burden of production shifts to [the City] to show that it is unable to accommodate [Brunckhorst]." Id.

As an initial matter, Brunckhorst was not entitled to return to the Senior Accountant position because he did not return to work prior to the expiration of his FMLA leave. See 29 U.S.C.A. § 2614(a)(1)(A)-(B) (requiring an employer to restore an employee to either his original position or an equivalent position upon return from FMLA leave). There was also no medical reason why Brunckhorst needed to be reinstated to his former position, as both positions were sedentary desk jobs. Brunckhorst points to an Equal Employment Opportunity Commission (EEOC) "Enforcement Guidance" document stating that an employer is required to hold open the original position of an employee that has been granted leave as a reasonable accommodation unless the employer can demonstrate that holding open the position would impose an undue hardship. The EEOC document, however, is not binding authority. See Ctr. for Special Needs Tr. Admin., Inc. v. Olson, 676 F.3d 688, 701 n.4 (8th Cir. 2012) (concluding that similar documents hold only persuasive value). Brunckhorst fails, then, to show that returning to his original position was a reasonable accommodation.

-6-

Brunckhorst's request that he be allowed to work from home is not a reasonable accommodation in light of his testimony that he could work at City Hall but that it "would have been easier" to work from home. We have held that an employer is not required to accommodate an employee based on the employee's preference. See Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1019 (8th Cir. 2000) (noting that an accommodation need not be plaintiff's preferred choice but must only be reasonable). Further, Brunckhorst's medical restrictions did not state that he must work from home. Though Brunckhorst informed the City that he could not drive on March 24, his doctor's restrictions did not state that he was unable to drive nor did Brunckhorst clarify that he was unable to obtain transportation to City Hall. See Liljedahl, 341 F.3d at 842 (noting that an employer is required only "to accommodate known limitations so an employee can perform her job, but a requested accommodation must relate to the limitation"). Brunckhorst later testified that he requested to work from home because he would have episodic pain that required him to lie down and lift his legs. He did not inform the City of this, however, until after his termination. See id. (concluding that an employer is not legally required to provide accommodation for unknown health problems). Instead, the City's proposed accommodation was consistent with the doctor's decision that Brunckhorst be allowed to work four hours per day up to May 18, 2015.

Brunckhorst also failed to make a facial showing that he could have performed the essential functions of his job remotely. He admitted that he would be unable to perform certain IT functions of his original position remotely. As to his finance duties, Brunckhorst admitted that another employee would have to scan certain documents for him, a task he would have normally done at City Hall. He also admitted that an employee would need to physically bring the payroll checks to his house. An employer "is not obligated to hire additional employees or reassign existing workers to assist [an employee] in h[is] essential duties." Fjellestad, 188 F.3d at 950. Johnson testified that the City is a small organization and that the new position required Brunckhorst's presence at City Hall to cover for other staff as well

as to interact with the public. Working remotely was thus not a reasonable accommodation for Brunckhorst's disability.

B.

Brunckhorst claims that the City eliminated his original position and terminated him because of his disability. To establish a prima facie case of disability discrimination, Brunckhorst must show that "(1) [he] has a disability within the meaning of the MHRA [and ADA], (2) [he] is qualified to perform the essential functions of h[is] job, with or without reasonable accommodation, and (3) [he] suffered an adverse employment action because of h[is] disability." Liljedahl, 341 F.3d at 841. The employer then has to show a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To prevail, the plaintiff must show that the defendant's proffered reason is a pretext for discrimination. Id. at 804.

Brunckhorst has not presented evidence showing that the City eliminated his position because of his disability or that the City terminated him because of his disability. As set forth above, Brunckhorst was not entitled to come back to his position after exhausting his FMLA leave. Moreover, because the evidence indicates that the position was eliminated to increase the City's efficiency, there is no inference of discrimination. With respect to the City's offer of reassignment to a position with lower pay, "[a]n employer may reassign an employee to a lower grade and paid position if the employee cannot be accommodated in the current position and a comparable position is not available." Cravens, 214 F.3d at 1019 (alteration in original) (citation omitted). Further, the City terminated Brunckhorst's employment because he refused to return to work after the City had been negotiating with him for months. The evidence does not support an inference of discrimination, and Brunckhorst has thus not shown discriminatory termination.

## C.

Brunckhorst also claims that the City failed to engage in an interactive dialogue with him.  To establish such a claim, Brunckhorst must show: (1) that the City knew about the employee's disability, (2) that Brunckhorst requested accommodation or assistance for his disability, (3) that the City did not make a good faith effort to assist Brunckhorst in seeking accommodation, and (4) that Brunckhorst could have been reasonably accommodated but for the City's lack of good faith.  Id. at 1021.

The district court correctly determined that no reasonable juror could conclude that the City had failed to participate in the interactive process.  Brunckhorst attempts to narrow the window of the interactive process to the last few days prior to his termination and claims that the City offered him only one, take-it-or-leave-it accommodation.  To the contrary, the record shows that the City engaged in an interactive dialogue with Brunckhorst for months regarding his return to work.  During that time, the City extended his leave multiple times, made multiple requests for information regarding what accommodations he required, and offered accommodations consistent with his doctor's restrictions.  There is no genuine issue of material fact that the City engaged in anything but a good-faith interactive dialogue.

## D.

Brunckhorst argues that the City terminated his employment because he complained of disability discrimination.  "To prove a retaliation claim, a plaintiff must show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events."  Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 914 (8th Cir. 2006).

-9-

Brunckhorst fails to show any causal connection. He argues that the timing between his complaint of discrimination and his termination demonstrates temporal proximity sufficient to support an inference of causality. Brunckhorst claims that he first complained of discrimination in his attorney's April 14, 2015, letter, dated fifteen days prior to his termination. Yet Brunckhorst admitted in his deposition that he first complained that he was being discriminated against during the December 22, 2014, meeting—four months prior to his termination. Throughout those four months, the City continued communicating with Brunckhorst regarding his return to work and continued offering unpaid leave as a reasonable accommodation. Without more, the four-month period between his first complaint of discrimination and his termination is not sufficient to establish causation through temporal proximity. See Noyes v. Am. Tissue Servs. Found., 310 F. App'x 52, 53 (8th Cir. 2009) (per curiam) (deciding that there was no causation when, without more evidence, "approximately four to five months separated [plaintiff's] report and the adverse employment action"). Even if Brunckhorst had not complained of discrimination until April 14, 2015, a temporal connection by itself is not sufficient to establish a causal connection. Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 761 (8th Cir. 2004). Instead, the City proceeded to work with Brunckhorst after that date. It did not terminate his employment until he continuously rejected the City's proposed accommodations and did not return to work. His retaliation claim thus fails.

The judgment is affirmed.

_____