RENDERED:  AUGUST 24, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0004-DG

JOYCE TURNER                                                        APPELLANT


                          ON REVIEW FROM COURT OF APPEALS
V.                        NOS. 2019-CA-0328 & 2019-CA-0569
                          JEFFERSON CIRCUIT COURT NO. 11-CI-006125


NORTON HEALTHCARE, INC.                                             APPELLEE


### OPINION OF THE COURT BY JUSTICE CONLEY
### AFFIRMING

This case is before the Court on discretionary review of the opinion of the

Court of Appeals that reversed the verdict of the jury that found in favor of the

Appellant, Joyce Turner. Applying the Kentucky Civil Rights Act (KCRA),[1] the

Court of Appeals ruled that Turner had failed to establish that she had a

qualifying disability as a matter of law, and her case should not have gone to

the jury. In other words, that the trial court should have granted Norton

Healthcare, Inc.'s (Norton) motion for a directed verdict or its motion for

judgment notwithstanding the verdict. Turner moved for discretionary review,

arguing that the Americans with Disabilities Act Amendments Act (ADAAA)[2] is

controlling and should be applied to Kentucky's KCRA. This is the only issue

mentioned in the motion for discretionary review, so we limit our opinion to

---

[1] Kentucky Revised Statutes (KRS) 344.010 – KRS 344.990.
[2] 42 U.S.C. § 12102(2)(b). This act was passed by Congress in 2008.

this issue. RAP 44(c)(5); *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 41 (Ky. 2017) (citing *Ellison v. R & B Contracting, Inc.,* 32 S.W.3d 66, 71 (Ky. 2000)).[3] Consequently, much of the argument before this Court has centered on the General Assembly's intent in passing the KCRA, and the effect of the ADAAA. We commend the parties for their thorough briefing of this issue, but we conclude under either statute that Turner failed to demonstrate she had a qualifying disability. We, therefore, decline to answer whether the KCRA incorporates the ADAAA as that is a secondary question unnecessary to answer to reach resolution in this case.

## I. Facts

Turner worked as a registered nurse for Norton Suburban Hospital for approximately eight years. In June 2009, she was diagnosed with Stage III metastatic breast cancer. She required surgery, chemotherapy, and radiation therapy. Her surgery was in July 2009, followed by chemotherapy for six months. Radiation therapy began in January 2010 and concluded in February that same year.

In October 2009, three months into her chemotherapy, Turner's supervisors compelled her to take a three-month medical leave of absence.

---

[3] The parties have also briefed the question of whether the trial court should be affirmed based on the evidence when considering Turner's "regarded as" claim. Such a claim does not require proof of actual disability. *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001). But RAP 44(C)(5) requires a motion for discretionary review to contain a "clear and concise statement of (a) the material facts, (b) the questions of law involved, and (c) the specific reason or reasons why the judgment should be reviewed." Turner has failed to comply with this rule relating to her "regarded as" claim; consequently, it will not be reviewed.

Turner opposed taking leave but, as she testified, "I got the distinct impression that this decision had been made, that I would be taking leave." Turner believed if she did not acquiesce in taking leave her job would be in jeopardy.

Turner returned to work in January of 2010, having requested and received an accommodation to move her lunch break, two ten-minute breaks, and an extra twenty minutes accommodated, to the end of her shift so that she could go to her radiation therapy. This therapy was three twenty-minute treatments per week. On the first day of scheduled treatment, however, Turner was informed the accommodation had been revoked as no other nurses could cover the hour she would be gone. Despite this, Turner made it to her first treatment and was told that so long as she could leave promptly at the end of her shift, the radiation center would stay open late on her behalf. Turner informed her supervisors of this, and they approved, but on January 15 they informed Turner that she would have to remain "on call" at the end of her shift one day per week. This "on call" duty was allegedly random so she could not schedule around it. Turner testified that she was unaware of any other nurse on her shift also having to remain on call one day per week in January 2010. Ultimately though, she was in fact never required to stay on call as she was accommodated for the duration of January and she was supposed to start on a new shift which would allow her to get her treatments in the morning before work, starting in February.

On January 26, Turner's supervisor requested an audit of Turner's medication transactions for the month of January. Norton used the Pyxis

Medstation system to track transactions and provide information on the quantities of narcotics and stored medication prior to retrieval by a nurse or doctor.[4] This audit apparently revealed sixteen violations of medication disbursement, i.e., missing narcotics. On January 27, Turner met with her supervisors and an Employee Relations Manager, where she was told they believed Turner had returned to work too soon, and that she might be suffering from "chemo brain," a side-effect of chemotherapy that manifests as confusion and delayed reaction. They suggested Turner should seek to take additional medical leave but also placed her on administrative leave pending an investigation into the missing narcotics. An additional audit of Turner's Pyxis Medstation records for July 2009, the month she underwent surgery, revealed five more alleged violations. On February 1, Turner was fired. A formal complaint was lodged with the Kentucky Board of Nursing, the Louisville Metro Police Department, and the federal Drug Enforcement Agency. The Kentucky Board of Nursing would eventually dismiss its investigation of Turner and no disciplinary action was taken against her. There is no evidence criminal charges were ever filed against her. At trial, Turner did have an expert testify regarding these alleged violations. He testified that eighteen of the twenty-one identified violations could be accounted for with "benign explanations." The expert testified that Norton's investigation was not in conformity with industry standard, therefore negligent, because it did not account for the "full audit

---

[4] At trial this system was described as a "computerized safe deposit box" of drug withdrawals and deposits in the drug dispensing cabinet, as well as recording the return or "wasting" of medications.

trail" data. He also stated that he could not exclude the possibility that Norton's departure from the industry standard was intentional because said data was available to Norton at the time of its investigation; but neither could he say it was intentional.

Of her own testimony, Turner testified she took two weeks off work after her surgery to remove the cancer because she had a drain for fluid under her arm. She was able to return to work after this drain was removed. She also told her doctor prior to beginning chemotherapy that she was feeling fine and not anticipating taking off work; however, he convinced her to prepare to take intermittent medical leave when necessary. She only did so once in October. She testified to being unconcerned about working while on chemotherapy, stating she felt fine and preferred to be active. She said she had "very, very little, very subtle things" when it came to side-effects from the chemotherapy affecting her mind and memory. She gave an example of watching a television show with her daughter and forgetting an immediately previous scene. She said she was "stretching" to even give an example. But she also testified she was unaware of any instance when these slight memory issues affected her job performance, and that none of her co-workers or supervisors informed her of an instance when memory issues might have affected her job performance. Of her other side-effects from chemotherapy she testified to hair loss, fatigue, nausea, and hot flashes but she did not testify to any of these being of any significant duration. Turner was clear these side effects did not interfere with her work, and she strategically scheduled her chemotherapy around her work

schedule to ensure any side effects, if they should occur, would more likely do so when she was not working. In October 2009, when her supervisors pressed her to take extended medical leave, they told her they believed she was stretching and overdoing herself. Turner testified she was thrown off and confused as to why they would think that. When she asked her supervisors if there was a problem with her performance they responded, "No, definitely not." Finally, when she returned to work in January 2010, she was specifically released by her doctor to work without restrictions and the only accommodation she needed was merely related to scheduling as detailed above.

Turner filed suit against Norton in September 2011, alleging discrimination under the KCRA on the basis of a disability or perceived disability; on the basis of age; and a claim for punitive damages and intentional infliction of emotional distress. The case went to trial in June 2018. After four days, the parties closed their proof and Norton moved for a directed verdict. Norton had argued that Turner failed to demonstrate her cancer was a qualifying disability under the KCRA. The trial court denied the motion. The jury found in favor of Turner, awarding her $91,139.59 in backpay and $1 million in damages for embarrassment and humiliation. The trial court reduced the backpay award some but otherwise confirmed the verdict and entered judgment accordingly. Norton filed a motion for judgment notwithstanding the verdict, arguing again that Turner had failed to meet her burden that she was actually disabled under the KCRA. Turner argued that the KCRA should be interpreted in conformity with the 2008 ADAAA. The trial court denied the

motion. Norton appealed and Turner filed a cross-appeal regarding the reduction of backpay.

At the Court of Appeals, the court ruled that the ADAAA did not apply to the KCRA. Accordingly, pre-ADAAA federal law was still applicable in interpreting and applying the KCRA. Under those standards, the Court of Appeals ruled, "that the evidence cited by Turner at trial and in her argument on appeal concerning this issue omits any specific evidence of a qualifying disability under the KCRA." It explained further,

> it is undisputed that Turner returned to work at Norton after her chemotherapy treatments with no restrictions. Turner also repeatedly testified that she had no physical limitations resulting from her cancer or its treatment other than brief occasions of fatigue, nausea, and hot-flashes. In fact, she was very adamant about how well she felt during her treatment.

Finally, it noted that at oral argument before the Court of Appeals, Turner's counsel conceded, "We did not argue that Turner could not work, that she could not take care of herself or perform manual tasks." The Court of Appeals endorsed the proposition that cancer could be a qualifying disability but there must be "clearly articulable evidence that conforms with KRS 344.010(4) and its associated case law, [or else] cancer cannot automatically be considered a qualifying disability." Thus, the Court of Appeals reversed the verdict. Turner filed her motion for discretionary review before this Court arguing only that the Court of Appeals erred in failing to apply the ADAAA to the KCRA. We granted discretionary review to resolve that question but find it secondary to the fact that under either the KCRA or the ADAAA standards, Turner failed to provide sufficient evidence of a qualifying disability.

7

## II. Standard of Review

CR[5] 50.02 allows a party to move a trial court for a judgment notwithstanding the verdict.

> In ruling on either a motion for a directed verdict or a motion for judgment notwithstanding the verdict, a trial court is under a duty to consider the evidence in the strongest possible light in favor of the party opposing the motion. Furthermore, it is required to give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence. And, it is precluded from entering either a directed verdict or judgment n.o.v. unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ.

*Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky. App. 1985). "On appeal the appellate court considers the evidence in the same light." *Sutton v. Combs*, 419 S.W.2d 775, 777 (Ky. 1967). The interpretation of statutes presents a *de novo* question of law, and we are not bound by the lower courts' interpretations. *Barnett v. Cent. Ky. Hauling, LLC*, 617 S.W.3d 339, 341 (Ky. 2021).

## III. Analysis

Under the KCRA,

> "Disability" means, with respect to an individual:
> (a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual;
> (b) A record of such an impairment; or
> (c) Being regarded as having such an impairment.

KRS 344.010(4). The KCRA was meant to be interpreted consistent with similar federal laws, including the Americans with Disabilities Act of 1990 (ADA). KRS 344.020(1)(a). To succeed on a claim, an individual must prove they have an

---

[5] Kentucky Rules of Civil Procedure.

8

impairment that substantially limits a major life activity. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003). "Major life activities include, among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Id.* (internal footnote omitted). "[A] person [must] be presently—not potentially or hypothetically—substantially limited in order to demonstrate a disability. A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999). A substantial limitation under the pre-ADAAA law is determined by the duration of the impairment, the impairment's nature and severity, and the long-term impact resulting from the impairment. *Larison v. Home of the Innocents*, 551 S.W.3d 36, 44 (Ky. App. 2018) (citing 29 C.F.R. § 1630.2(j)(2) (effective until May 24, 2011)). But "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton*, 527 U.S. at 482-83.

The determination of whether a person is disabled under the act is an "individualized inquiry." *Id.* at 483. "Whether the plaintiff has an impairment and whether the conduct affected by the impairment is a major life activity under the statute are legal questions." *Hallahan v. Courier-Journal*, 138 S.W.3d 699, 707 (Ky. App. 2004). "[W]hether the impairment substantially limits the major life activity generally is a factual issue for the jury, but it may be resolved upon summary judgment under the appropriate circumstances." *Id.*

9

As detailed above, Turner consistently maintained throughout trial that her cancer never impacted her ability to perform her job or perform a "major life activity" as originally defined by the ADA or the KCRA. She testified that this was true, despite her surgery, chemotherapy, and radiation therapy. Even when she took medical leave, she testified that it was not of her own volition but compelled by her supervisors. The only adverse effects Turner testified to experiencing as a result of chemotherapy was fatigue, nausea, and hot-flashes. She otherwise described the side-effects as "very, very little, very subtle," and struggled to think of a specific example. A person who testifies that she never was substantially limited in the performance of a major life activity as a result of her impairment simply cannot be deemed disabled under the KCRA. *Ellison v. Software Spectrum Inc.*, 85 F.3d 187, 191 (5th Cir. 1996) ("Obviously, her ability to work was affected; but, as reflected in the above-quoted statute and regulations, far more is required to trigger coverage . . . ."); *E.E.O.C. v. R.J. Gallagher Co.*, 181 F.3d 645, 655 (5th Cir. 1999); *Liljedhal v. Ryder Student Trans. Serv., Inc.*, 341 F.3d 836, 841 (8th Cir. 2003). Applying the KCRA, federal district courts in Kentucky have reached the same conclusion. *Suchanek v. Univ. of Ky.*, No. CIV.A. 3:10-19-DCR, 2011 WL 3045986, at *8 (E.D. Ky. July 25, 2011); *Watkins v. Shriners Hosps. for Child., Inc.*, No. 5:18-CV-548-REW-MAS, 2020 WL 2309468, at *10 (E.D. Ky. May 8, 2020).

Per *Larison*, 551 S.W.3d at 44, the evidence established that the duration of Turner's impairment was, at most, approximately eight months but it must be kept in mind that her surgical excision of the cancerous cells was successful

10

approximately a month after her initial diagnosis. Her chemotherapy was only six months long. And her radiation therapy, which Turner testified was not medically necessary though a prudent option, lasted only five weeks. Assuming for argument's sake she established her impairment was of a sufficiently long enough duration, her testimony leaves no doubt that its severity was negligible.

Although Stage III cancer is certainly dangerous and life-threatening when left untreated, the law forbids us to consider hypotheticals or potentialities when considering an impairment. *Sutton*, 527 U.S. at 482. And we are also compelled to consider an impairment according to its "corrected" status by medication or other measures. *Id*. at 482-83. Turner's testimony was clear that she suffered only minor episodes of nausea, fatigue, hot flashes, and fleeting moments of short-term memory loss. Other than this she stated she preferred to be active, did not struggle with her work, and did not need to take extended medical leave. She did not testify to any substantial limitation in her personal life or completing daily tasks. The testimony does not establish her impairment was anything but negligibly severe.

Finally, she did not testify to any long-term health impact resulting from her cancer. Only a few months after being fired from Norton, in May 2010, she was able to get a new job answering phone calls regarding healthcare coverage for Medicaid claims. This job required a Registered Nurse license. She was eventually promoted, and her duties required her to travel around Kentucky auditing hospital records. She stayed at that job until November 2014 when she voluntarily resigned. A few months later she retired, being 62 at the time,

11

and began working part-time as a private nurse. In this capacity, it was she who helped other people go about their daily lives, driving them where they needed to go, doing chores around the house, or simply keeping them company. Thus, we agree with the Court of Appeals "that the evidence cited by Turner at trial and in her argument on appeal concerning this issue omits any specific evidence of a qualifying disability under the KCRA." The Court of Appeals is affirmed.

This brings us to the ADAAA and its impact on the KCRA. It has now been approximately fifteen years since the ADAAA was passed and the General Assembly has not expressed any intention to incorporate the federal amendments into the KCRA. Obviously, the protection of disabled persons from unjust discrimination, and how that class is to be defined for purposes of legal protection, is within the purview of the General Assembly's authority to set public policy. We call upon the General Assembly to bring clarity to this issue, one way or another, as whether the KCRA should be updated in line with the ADAAA is ultimately not within this Court's authority to decide. But even if we assume for argument's sake that the KCRA was intended to be interpreted consistent with the ADAAA, Turner still failed to present sufficient proof of a qualifying disability.

The ADAAA unambiguously states that "normal cell growth" is a major life activity. 42 U.S.C. § 12102(2)(B). The ADAAA and accompanying implementing regulations "set a low bar for proving an actual disability." *Baum v. Metro Restoration Servs., Inc.,* 764 Fed.Appx. 543, 546 (6th Cir. 2019). But

12

when an impairment "require[s] medical knowledge to understand[,]" then a plaintiff must still put on proof from a qualified expert. *Id.* In *Baum*, the plaintiff suffered from heart disease and had noticed his treating physician as a lay witness. But the plaintiff in that case "failed to disclose his doctor—or anyone else with specialized medical knowledge—as an expert witness, [thus] he lacks the evidence he needs. And without that evidence, he hasn't created a factual issue over whether he is actually disabled." *Id.* The ADAAA may set a low evidentiary bar, but it is an evidentiary bar, nonetheless. "Although the ADAAA makes the individualized assessment 'particularly simple and straightforward' for diseases like cancer, 29 C.F.R. § 1630.2(j)(3)(ii), an individualized assessment must still take place. To undertake that individualized assessment, courts have required some evidence of the plaintiff's substantial limitation—even when the limitation seems self-evident in context." *Alston v. Park Pleasant, Inc.*, 679 Fed.Appx. 169, 172 (3rd Cir. 2017).

In Turner's case, her Complaint did not mention normal cell growth. No physician expert on cancer ever testified on her behalf. No such expert was even proposed by Turner and there is no record such an expert was excluded by the trial court. Moreover, the motions in limine proposed by Norton prior to trial did not mention normal cell growth and the trial court made no rulings that such evidence would not be allowed. Turner's counsel's opening statement to the jury also never mentioned "normal cell growth" or any variation of that phrase. No feasible argument exists that Turner was prevented from presenting such evidence to the jury. The only mentions of "normal cell growth" were when

13

Turner's counsel attempted to question Turner's supervisors about the issue. But they were not offered as expert witnesses to testify about cancer and their qualifications to opine about cancer have not been argued by Turner on appeal. When Turner's counsel told the jury in closing arguments that she "couldn't have her cells grow normally," Norton objected and the trial court sustained, instructing Turner's counsel to conform his argument to the evidence presented at trial. In other words, no evidence regarding normal cell growth was presented at trial. We conclude that even if the ADAAA were applicable to the KCRA, Turner's claim would still fail for lack of evidence.

## IV. Conclusion

Per the KCRA, there was a complete absence of proof when it comes to Turner's claim that she suffered an impairment that substantially limited a major life activity. Turner testified consistently that she was never unable to perform a major life activity for any significant duration from the time she was diagnosed with cancer to the time she was fired by Norton. Additionally, even if the ADAAA applied, Turner's claim would still fail as she did not submit expert testimony regarding normal cell growth. The Court of Appeals is affirmed.

All sitting. All concur.

14

COUNSEL FOR APPELLANT:

Jeremiah Reece
Soha Tajoddin Saiyad
Kelly Parry-Johnson
Reece Saiyed Parry-Johnson LLP

Paul Stewart Abney
Abney Law Office, PLLC

COUNSEL FOR APPELLEE:

Donna King Perry
Jeremy S. Rogers
Robert C. Rives, IV
Dinsmore & Shohl LLP

COUNSEL FOR AMICUS CURIAE,
KENTUCKY COMMISSION ON HUMAN RIGHTS:

L. Joe Dunman
Colt C. Sells
Sana Abhari

COUNSEL FOR AMICUS CURIAE,
KENTUCKY EQUAL JUSTICE CENTER &
SIOBHAN DIAMOND:

John S. Friend
Friend Law, PSC

McKenzie Cantrell
Kentucky Equal Justice Center